## LUCIUS B. WARNER, AS ASSIGNEE, ETC., APPELLANT, *v.* EDWARD S. JAFFRAY AND OTHERS, RESPONDENTS.

*General assignment — title of the assignee to personal property of the assignor situated in another State — rights of attaching creditors thereto.*

March 1, 1881, one Weld, at Jamestown, in Chautauqua county in the State of New York, executed and delivered to the plaintiff a general assignment for the benefit of creditors, which was recorded in the office of the clerk of that county at eight A. M. on March second. It was recorded in the office of the recorder of deeds of Crawford county, Pennsylvania, on the eighteenth, and in the office of the recorder of deeds of Warren county, Pennsylvania, on the nineteenth of that month. On March 1, 1881, after the delivery, but before the recording of the assignment, the defendants, residents of this State, obtained attachments in actions commenced by them in the Courts of Common Pleas of Crawford and Warren counties, Pennsylvania, and under such attachments seized the goods and merchandise which the assignor had in those counties where he had maintained stores for carrying on a mercantile business.

A statute of Pennsylvania provides that whenever an assignment for the benefit of creditors shall be made by any person residing out of the State " such assignment may be recorded in any county where such estate, real and personal, may be, and take effect from its date, provided that no *bona fide* purchaser, mortgagee or creditor having a lien thereon before the recording in the same county, and not having had previous actual notice thereof, shall be affected or prejudiced."

*Held,* that the defendants acquired a valid lien upon the goods seized under the attachments, and could not be enjoined from proceeding under them in an action brought against them in this State by the assignee,

APPEAL from a judgment in favor of the defendants, entered on the report of a referee.

*A. J. Vanderpoel,* for the appellant.

*William Allen Butler,* for the respondents.

DANIELS, J.:

The plaintiff brought this action as assignee under a general assignment made to him by De Forest Weld for the benefit of his creditors, for the purpose of enjoining and restraining the defendants from proceeding under attachments issued in actions commenced in the Courts of Common Pleas for the counties of Crawford and Warren, in the State of Pennsylvania, for the recovery of about $60,000.

The assignment to the plaintiff was executed by the debtor on the 1st of March, 1881, at Jamestown in Chautauqua county and State of New York, and it was recorded in the office of the clerk of that county at eight o'clock in the morning on the 2d of March, 1881. But it was not recorded in the office of the recorder of deeds of Crawford county, Pennsylvania, until the eighteenth of the same month, nor in the office of the recorder of deeds of Warren county until the nineteenth of that month. On the 1st day of March, 1881, after the assignment had in fact been delivered, but before it was recorded even in Chautauqua county, the defendants obtained attachments in the actions commenced by them in the Courts of Common Pleas of Crawford and Warren counties in the State of Pennsylvania, and under such attachments attached and seized the goods and merchandise which the debtor had in these counties where he had maintained stores for carrying on the mercantile business. The defendants were residents and citizens of the State of New York, and because of that fact it was insisted by the plaintiff that their right to proceed against the debtor's property had been divested by the assignment before their seizure of the property under the attachments. This position was taken mainly under the authority of *Van Buskirk* v. *Warren* (2 Keyes, 119), which in the principle decided by it, was similar to the cases of *Bigelow* v. *Baldwin* (1 Gray, 245); *Rhode Island Bank* v. *Danforth* (14 id., 123) and *Thurston* v. *Rosenfield* (42 Mo., 474). The latter case is identical in principle with that of *Van Buskirk* v. *Warren,* for they concur in holding that a citizen and resident of the State in which the assignment may have been made and delivered cannot afterwards, by means of an attachment, obtain priority over the title of the assignee under a general assignment even where it may be in contravention of the laws of the State in which the attachment is issued, if as a matter of fact it conformed to and was legal under the laws of the State in which it was executed by the debtor and in which the creditor himself also resided. But the case of Van Buskirk was, after its decision by the Court of Appeals, removed to the Supreme Court of the United States, and it was there reversed, for the reason that the principle upon which it had proceeded was deemed to be unsound. (*Green* v. *Van Buskirk,* 7 Wall., 139.)

And that case has been since considered to be a proper exposition of the law, both by the Court of Appeals of this State, and the Supreme Court of the United States. (*Edgerly* v. *Bush*, 81 N. Y., 199.)

In the decision of this case it was conceded that "Another State may make provision by statute in respect to personal property actually within its jurisdiction. Though a transfer of personal property, valid by the law of the domicile, is valid everywhere as a general principle, there is to be excepted that territory in which it is situated and where a different law has been set up, when it is necessary for the purpose of justice that the actual *situs* of the thing be examined." (Id., 203, 204.) And *Hervey* v. *Rhode Island Locomotive Works* (93 U. S., 664, 671, 672) followed in the line of the same principle.

The property seized under the attachment was tangible in its nature, and capable therefore, as a matter of fact, of having a local *situs* different and distinct from that of the residence of its owner. In this respect it was within the reasoning and conclusion of *People* v. *Gardner* (51 Barb., 352), which held that personal property in fact located in another State was not taxable as against the owner, although he resided within this State. And this was followed in *People ex rel. Jefferson* v. *Smith* (24 Hun, 492), where the same rules were again invoked by the same relator, and the latter determination has since been affirmed, though not reported, by the Court of Appeals.

Under the controlling principle of these authorities, it was within the power of the legislature of the State of Pennsylvania to declare and control the effect of such an assignment executed within this State, so far as it included this description of property situated in the State of Pennsylvania, and this authority had been exercised by the legislature before the execution and delivery of this assignment. The statute upon that subject is in the following terms:

"Section 1. Whenever any person making an assignment of his or her estate, situated in this commonwealth, for the benefit of creditors, shall be resident out of this State, such assignment may be recorded in any county where such estate, real and personal, may be, and take effect from its date, provided that no *bona fide* purchaser, mortgagee or creditor, having a lien thereon before the

recording in the same county, and not having had previous actual notice thereof, shall be affected or prejudiced."

It was the expressed object of this act to define and declare the effect of an assignment made in another State upon property actually located and situated in the State of Pennsylvania. And it was not allowed to take effect against a *bona fide* purchaser, mortgagee or creditor, having a lien upon such property before it was recorded in the same county, unless the party claiming in hostility to it had actual previous notice of it. No exception was made excluding creditors residing in other States from the benefit of the provisions of this statute, and no reason therefore can be deduced from its terms for subjecting it to any exception of that description. It was, on the contrary, the evident purpose and design of the legislature to make the provision entirely general and comprehensive, including all proceedings which might be authorized to be taken under the authority of the courts of the State, for the purpose of acquiring a lien upon the property and appropriating it to the payment of the debts of the assignor.

That the defendants were *bona fide* creditors of the assignor having no actual notice, at the time they acquired their lien under the attachments, of the assignment, are facts which have been established upon the trial of this action. And it is not claimed that the evidence sustaining them was not sufficient to justify the conclusion which was drawn from it by the learned referee before whom the trial was had. Their proceedings therefore must be regarded as having been instituted and carried on in good faith for the purpose of enforcing the obligations which the assignor had incurred to them by the preceding sale and delivery of goods and merchandise to him. As such creditors they had the right to proceed as they did against their debtor's property in the courts of the State of Pennsylvania.

And if an application had been made there to set the attachments aside, it is clear that the application would not have been sustained. For in *Philson* v. *Barnes* (50 Penn., 230) it was held that process by way of an attachment would be sustained in favor of a nonresident creditor against the title of an assignee who had not complied with the requirements of the statute of that State so as to render the assignment legal and regular. And a similar legal prin-

ciple was maintained in this State in *Hibernia National Bank* v. *Lacombe* (84 N. Y., 367), where it was held in general terms that when a party is "once properly in court, and accepted as a suitor, neither the law nor court administering the law will admit any distinction between the citizen of its own State and that of another. Before the law and in its tribunals there can be no preference of one over the other." (Id., 385.)

And this principle has been still more recently considered and applied by the General Term of this department in the unreported cases of *Plimpton* v. *Bigelow* and *Claflin* v. *Frenkel.* And under it the courts do not seem to possess the power of depriving citizen creditors of this State of the remedy by attachment, prescribed for the collection of debts by another State in terms so broad as to be properly held applicable to all parties formally applying for the aid and assistance of the courts possessing the authority which appears to have been invested in the courts in which these attachments were issued. As the laws of Pennsylvania have been construed, the defendants had the right to institute and carry on these proceedings in the courts of that State. They were entirely legal and proper, and it would seem therefore to follow from the Constitution and laws of the United States that they must also be so regarded and sustained in the courts of this as well as all other States. For these were judicial proceedings which, in their orderly prosecution, may result in judgments under which the debtor's property will be appropriated to the payment of the defendant's debts. And as such they are within the provision declaring that, "full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State." (U. S. Const., art. 4, § 1.)

And congress, in subordination to this constitutional declaration, has prescribed the manner in which the records and judicial proceedings of the courts of the States shall be attested and authenticated, and it has to that end been provided that, "the said records and judicial proceedings so authenticated shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken." (U. S. R. S. 170,, § 905.)

The manifest object and purpose of these constitutional and legislative provisions was to secure to judicial proceedings the same

force and effect in other States that they have in the State where they may be pending and carried on. And such was the view taken of the effect of these provisions in *Green* v. *Van Buskirk* (*supra*), for it was there considered that the citizen of another State had the same right to have his judicial proceedings sustained as did a citizen of the State in which the proceedings were pending. Upon this subject it was said, in the course of the opinion, that " the right, under the Constitution of the United States and the law of congress, which Green invoked to his aid, is not at all affected by the question of citizenship. We cannot see why if Illinois, in the spirit of enlightened legislation, concedes to the citizens of other States equal privileges with her own in her foreign attachment laws that the judgment against the personal estate, located in her limits, of a nonresident debtor, which a citizen of New York lawfully obtained there, should have a different effect given to it under the provisions of the Constitution and the law of congress, because the debtor against whose property it was recovered happened also to be a citizen of New York." (7 Wall., 151.) This construction is clearly sustained by the Constitution and the act of congress, and no good reason stands in the way of applying it in support of the proceedings taken by the defendants, and by which, through their diligence, they have acquired a superior right, to so much of the debtor's property as was seized by them, over the assignment to the plaintiff, which at the time of such seizure was not valid against them under, or supported by the laws of the State of Pennsylvania. The effect of this construction will be to secure to the judicial proceedings of one State in all the others the same uniform validity and authority which they may have acquired under the laws of the State in which they are pending. And that it is a wholesome and convenient general principle cannot be denied, and for that reason it has been carefully entrenched in the provisions of the Federal Constitution. And it carries out the policy of another provision declaring that, " the citizen of each State shall be entitled to all privileges and immunities of citizens in the several States." (U. S. Const., art. 4, § 2.)

It is not necessary that the point should be considered whether the assignment upon its delivery, and before it was recorded, operated as a transfer of the title of the debtor's property. For whether

it did or not under the circumstances of this case, as they are affected by the laws of the State of Pennsylvania, the defendants made a lawful seizure of their debtor's property under their attachments. For these reasons, as well as those assigned by the learned referee, the judgment in the case was right, and should be affirmed, with costs.

DAVIS, P. J., and BRADY, J., concurred.

Judgment affirmed, with costs.